EQUISTAR CHEMICALS,
L.P., Petitioner,

v.

DRESSER–RAND COMPANY,
Respondent.

No. 04–0121.

Supreme Court of Texas.

Argued Nov. 29, 2005.

Decided May 4, 2007.

Claudia Wilson Frost, Christopher Jene Richart, Monica Cristina Flores, Jeremy Jason Gaston, Mayer, Brown, Rowe & Maw LLP, Houston, Thomas H. Cook Jr., Richard G. Urquhart, Zelle Hofmann Voelbel Mason & Gette, LLP, Dallas, for petitioner.

Thomas C. Wright, Michael A. Choyke, Chad Michael Forbes, Wright Brown & Close, LLP, Houston, for respondent.

Ben Taylor, Fulbright & Jaworski L.L.P., Dallas, for amicus curiae.

Justice JOHNSON delivered the opinion of the Court.

This case presents questions of how the economic loss rule is to be asserted in the trial court.

## I. Background

In the mid 1970s Equistar Chemicals, LP[1] bought two gas compressors from Dresser–Rand Company. Equistar operated the compressors as part of a chemical manufacturing process. The compressors, OP–I and OP–II, are large gas compression units containing many component parts. Impellers, which resemble large fan blades, are essential parts of the compressors. In 1989 Dresser upgraded the compressors by increasing the size of the existing impellers from 42 inches to 44 inches. While the compressors functioned without major difficulties before the upgrade, afterwards the impellers failed to various degrees in 1991, 1993, and 1995. To address the recurring failures Equistar decided to revert to the 42–inch impellers, but sought to maintain the higher output achieved by the 44–inch impellers. Accordingly, Equistar retained Dresser to trim an impeller that Equistar purchased

from Dresser in 1991 from 44 inches to 42 inches and install it on OP–I. To effectuate Equistar's goal to achieve the higher output with the 42–inch impeller, Dresser advised Equistar to operate the 42–inch impeller at a higher speed than the speed at which it was originally operated.

On April 1, 1999 the OP–I impeller failed, causing major damage to the compressor, its turbine and adjacent parts of the plant. Following the April failure Dresser supplied engineering and repair services to help repair and reassemble the compressor. As part of the process Dresser replaced the failed 42–inch impeller with a 42–inch impeller that Dresser had sold to Equistar in the late 1980s. The replacement impeller failed on May 14, 1999, again causing extensive damage.

On July 24, 2000 Equistar sued Dresser because of the April and May 1999 failures. Equistar sought recovery for the cost of repairing and replacing all the damaged property, including the compressor and impellers, and for losses due to interruption of its business. Equistar alleged causes of action for negligence; strict liability for manufacturing, marketing and design defects; and breach of implied warranty of merchantability.

The case was tried to a jury. As to liability the jury found that the negligence of both Equistar and Dresser proximately caused the occurrence(s); manufacturing, design and marketing defects in the impellers were producing causes of the occurrence(s); and the impellers supplied by Dresser were unfit for the ordinary purposes for which they were used and the unfit condition proximately caused the oc-

1. Lyondell Chemicals was Equistar's predecessor in interest. The parties do not differentiate between dealings between predecessors in interest and dealings between

Dresser–Rand Company and Equistar, so neither will we. For simplicity we will refer to all dealings as being between Dresser and Equistar.

currence(s). The jury apportioned causation for the occurrence(s) 80% to Dresser and 20% to Equistar. In answer to the single damages question the jury found that Equistar's damages for repairs to its plant resulting from the occurrence(s) in question were $3,641,210. The trial court instructed the jury that, with respect to damages, it was to consider only the cost of repairs "in Harris County, Texas, to restore the Equistar Chemicals' ethylene plant to the condition it was in immediately before the occurrence(s) in question." The damages question was not conditioned on any other question. Dresser did not object to the damages question or instruction except for objections to the legal and factual sufficiency of the evidence.

Judgment was entered over Dresser's motion for judgment notwithstanding the verdict. Dresser's motion for new trial and second motion for judgment notwithstanding the verdict were overruled by operation of law.

The court of appeals held that Dresser's no-evidence objections preserved error as to the economic loss rule and that Equistar's claims for damages to the compressor were barred by limitations. It reasoned that the compressor was the subject of the relevant contract of sale between the parties, damage to the compressor itself was economic damage recoverable only through a contractual breach of warranty cause of action and the claim for damage to the compressor, whether caused by original or replacement parts, was barred when the statute of limitations ran on claims arising from breaches based on the original 1975 contract for sale of the compressor. 123 S.W.3d 584, 588. The court of appeals rejected Equistar's assertion that the failed impellers were the "prod-ucts" that formed the basis of the relevant agreement between Equistar and Dresser.[2] The court of appeals also held that (1) Equistar's claim for consequential business interruption damages, being contractual in nature, was barred by limitations for the same reason that the breach of warranty claims were barred and (2) because consequential damages were barred by limitations, Equistar's appeal of the pretrial summary judgment in favor of Dresser as to those damages was moot. Finally, the court of appeals held that some evidence supported Equistar's tort claims for damage to property other than the compressor and remanded that claim for a new trial.

As relevant to our disposition of the appeal, Equistar questions whether Dresser preserved error for appellate review as to the economic loss rule and if it did, the manner in which the court of appeals applied the rule. Equistar also urges, in part, that (1) the court of appeals improperly and *sua sponte* made an election of remedies for Equistar; and (2) the court of appeals improperly held Equistar's appeal from the pre-trial summary judgment as to its business interruption damages moot when the case was remanded for a new trial on tort theories.

Dresser asserts that (1) it preserved error as to the economic loss rule by its motion for judgment notwithstanding the verdict; (2) the court of appeals properly applied the economic loss rule; (3) the jury's findings of negligence and design, manufacturing and marketing defects are not supported by legally sufficient evidence; and (4) Equistar's claims in tort are barred by limitations and the statute of repose.

2. Because we conclude that Dresser did not preserve error as to the economic loss rule we express no opinion on that part of the court of appeals' opinion which addresses the rule and its application.

## II. The Economic Loss Rule

### A. General

■ The economic loss rule applies when losses from an occurrence arise from failure of a product and the damage or loss is limited to the product itself. *See Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77, 79–80 (Tex.1977); *Signal Oil & Gas Co. v. Universal Oil Prods.*, 572 S.W.2d 320, 325 (Tex.1978) ("[W]here only the product itself is damaged, such damage constitutes economic loss recoverable only as damages for breach of an implied warranty under the [Business and Commerce Code]."). The rule does not preclude tort recovery if a defective product causes physical harm to the ultimate user or consumer or other property of the user or consumer in addition to causing damage to the product itself. *See Nobility Homes*, 557 S.W.2d at 79–80; *Signal Oil*, 572 S.W.2d at 325; *Mid Continent Aircraft Corp. v. Curry County Spraying Serv.*, 572 S.W.2d 308, 313 (Tex.1978) ("[I]n transactions between a commercial seller and commercial buyer, when no physical injury has occurred to persons or other property, injury to the defective product itself is an economic loss governed by the Uniform Commercial Code.").

### B. Preservation of Error

Equistar contends that the economic loss rule is an affirmative defense Dresser did not assert and that in any event Dresser did not preserve error as to the economic loss rule. Dresser does not contend that it pled the rule, made any motions referencing the rule, or mentioned the rule in objections to the jury charge. The court of appeals acknowledged that Dresser's pre- and post-trial motions did not mention the rule. Nevertheless, referencing *Rocky Mountain Helicopters, Inc. v. Lubbock County Hosp. Dist.*, 987 S.W.2d 50, 52 (Tex.1998) and *Edward D. Jones & Co. v. Fletcher*, 975 S.W.2d 539, 543 (Tex. 1998), the court of appeals held that Dresser's no-evidence points in its directed verdict and post-trial motions "necessarily encompassed" the economic loss rule because if no tort claims could be asserted, then Equistar's cause of action accrued at the time of sale and its suit was untimely. 123 S.W.3d at 586 n. 10.

■ In *Signal Oil* this Court held that defective product remedies are adequately provided for in tort through application of section 402A of the Restatement (Second) of Torts and in contract by the implied warranty provisions of the Texas Business and Commerce Code. *See Signal Oil*, 572 S.W.2d at 325; TEX. BUS. & COMM. CODE §§ 2.315, 2.316. In transactions governed by the Business and Commerce Code the seller has the duty to furnish goods complying with the applicable contractual implied warranty unless the warranty is excluded or modified. *See id.* § 2.316. The warranties exist regardless of whether they are breached. When the Business and Commerce Code and its warranty provisions apply, the economic loss rule measures the damages recoverable. *See Nobility Homes*, 557 S.W.2d at 80 (noting that the Uniform Commercial Code was drafted specifically to govern commercial losses and provides the proper remedies to recover such losses). Equistar, as the party seeking recovery, had the burden to obtain findings to support a judgment in its favor, including findings as to damages. *See Polaris Indus. v. McDonald*, 119 S.W.3d 331, 336 (Tex.App.-Tyler 2003, no pet.) ("The elements of a cause of action for breach of the implied warranty of merchantability are as follows: 1) the defendant sold or leased a product to the plaintiff; 2) the product was unmerchantable; 3) the plaintiff notified the defendant of the breach; and 4) the plaintiff suffered injury."). We agree with Dresser

that because the existence and amount of damages were part of Equistar's cause of action, Dresser was not required to assert the economic loss rule as an affirmative defense. The rule is a consideration in measuring damages in a case such as this.

■ But, the jury was asked to find only one damages amount. The jury was not instructed to distinguish damages resulting from its findings that Dresser committed torts from its finding that Dresser breached an implied warranty. The jury was instructed to consider only the cost of repairs "to restore the Equistar Chemicals' ethylene plant to the condition it was in immediately prior to the occurrence(s) in question." Dresser did not object to the damages question or instruction as proposed and submitted. If Dresser believed that the jury charge presented an improper measure of damages because it allowed the jury to find both tort and contract damages by a single answer, it was required to timely object and make the trial court aware of its complaint in order to preserve error for appeal. *See* Tex.R. Civ. P. 272; Tex. R. Civ. P. 274 ("A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection. Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections."); *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex.1992); *Tribble & Stephens Co. v. Consol. Servs., Inc.*, 744 S.W.2d 945, 949 (Tex.App.-San Antonio 1987, writ denied) (holding that the defendant waived the right to complain on appeal that the plaintiff offered insufficient evidence of the proper measure of damages because defendant failed to point out to the trial court that the improper measure of damages was submitted to the jury). Dresser failed to preserve error to challenge the measure of damages the jury was instructed to use. Thus, damages are measured by the question and instruction given. *Wal–Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 715 (Tex.2001); *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex.2000).

■ Assuming, without deciding, that Dresser's no-evidence points in the trial court "necessarily encompassed" the contention that it owed no tort duty under the facts as the court of appeals held, 123 S.W.3d at 586 n. 10, the no-evidence complaints did not clearly and distinctly make the trial court aware of a contention that the economic loss rule applied to bar Equistar from recovering tort damages for injuries to the compressor. *See* Tex.R. Civ. P. 274. Even if there had been no evidence of a tort duty, there still was no question that Dresser sold the compressor and impellers to Equistar and that implied warranties of merchantability existed at some point as to both. The questions of how much damages, if any, could be recovered if the warranties had been breached and whether recovery of those damages was barred by limitations existed in the suit independent of the tort issues and questions. We agree with Equistar that Dresser's no-evidence objections and motions for judgment n.o.v., without more, did not preserve error as to the economic loss rule.

### III. Conclusion

The court of appeals erred in concluding that Dresser preserved error as to the economic loss rule. However, we agree with the court of appeals' conclusions that (1) legally sufficient evidence supported the jury's tort liability findings, (2) Equistar's tort claims were not barred by limitations, and (3) Dresser waived its statute of repose defense.

Because we must remand the case to the court of appeals for consideration of

Dresser's factual sufficiency challenges, we do not address any additional issues raised by the parties. Those issues should first be considered by the court of appeals in light of this opinion.

The judgment of the court of appeals is reversed and the case is remanded to the court of appeals for further proceedings consistent with this opinion.